**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| MICHAEL BROWN, | : | Case No. 1:22-cv-239 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Chief Judge Algenon L. Marbley |
| | : | Magistrate Judge Karen L. Litkovitz |
| | : | |
| WARDEN RON ERDOS, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER and
REPORT AND RECOMMENDATION**

Michael Brown, an Ohio prisoner proceeding *in forma pauperis* and without the assistance of counsel, has filed a civil rights action under 42 U.S.C. § 1983. Among other concerns, Plaintiff alleges that he has been harassed by prison staff in retaliation for filing a separate lawsuit against staff at a different prison. (Doc. 1-1, PageID 15). The matter is currently before the undersigned Magistrate Judge to conduct the initial screening of Plaintiff's complaint as required by law. 28 U.S.C. § 1915A(a); 28 U.S.C. § 1915(e)(2). Plaintiff's motion to file a supplemental complaint (Doc. 4) and his motion for a preliminary injunction and temporary restraining order (Doc. 5) are also pending before the Court. A letter from Plaintiff that appears to concern his other lawsuit was also filed on the docket of this case. (Doc. 6).

For the reasons that follow, the Undersigned **RECOMMENDS** that the Court allow Plaintiff's retaliation claim against Defendant Deemer to **PROCEED** but that the remainder of his claims against the rest of the Defendants be **DISMISSED**. The Undersigned further **RECOMMENDS** that the Court **DENY** Plaintiff's motion for a temporary restraining order and preliminary injunction.

## I.     Initial Screening Standard

Because Plaintiff is a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," and is proceeding *in forma pauperis*, the Court is required to conduct an initial screen of his Complaint. 28 U.S.C. §§ 1915A(a) and 1915(e)(2). The Court must dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b) and 1915(e)(2).

To state a claim for relief, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must construe the complaint in plaintiff's favor, accept all well-pleaded factual allegations as true, and evaluate whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id*. (quoting *Twombly*, 550 U.S. at 555).

In the interest of justice, this Court is also required to construe a pro se complaint liberally and to hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and citing Fed. R. Civ. P. 8(f) [now (e)]). Even with such a liberal construction, a pro se complaint must still adhere to the "basic pleading essentials." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Specifically, a pro se "complaint 'must contain either direct or inferential

allegations respecting all the material elements' to recover under some viable legal theory."

*Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d

712, 716 (6th Cir. 2005)).

## II. Background

Plaintiff recently filed two civil rights actions in the United States District Court for the

Southern District of Ohio. The First Case, *Brown v. Cool*, No. 2:21-cv-5146, was filed in the

Eastern Division of this Court, and is pending before Chief Judge Marbley and Magistrate Judge

Jolson. The First Case appears to concern events occurring at Ross Correctional Institution

("RCI"). (*See* Doc. 14, PageID 410 in the First Case).

The Second Case—this case—is *Brown v. Erdos*, No. 1:22-cv-239, which was filed in the

Western Division of this Court. It is pending before Chief Judge Marbley and the undersigned

Magistrate Judge. The Second Case concerns events occurring at Southern Ohio Correctional

Institution ("SOCF"). (*See* Complaint herein, Doc. 1-1, PageID 15). The cases are related (*see*

Doc. 3) but have not been consolidated and are proceeding separately.

Plaintiff filed the Second Case after being advised in the First Case that it was not

appropriate to supplement his original complaint about RCI with his claims about SOCF. (First

Case, Doc. 14, PageID 410-412 (recommending the denial of his motion to supplement and

directing the Clerk to return it to Plaintiff)). Plaintiff's original Complaint in the Second Case

(Doc. 1-1) is, he says, "incomplete." (Doc. 1-1, PageID 36). He has therefore submitted a

motion to file a supplemental complaint under Fed. R. Civ. P. 15. (Doc. 4). Some of this 192-

page filing appears to concern the First Case and is addressed to Magistrate Judge Jolson. (*See*

Doc. 4, PageID 44, 48-50). The remainder appears to correspond to or support the Complaint in

the Second Case. However, most of the motion to supplement (Doc. 4) appears to be documents

showing communications between Plaintiff and staff at SOCF about his concerns, which might appropriately be attached to a Complaint. The motion to supplement itself appears only to be two pages (Doc. 4, PageID 45, 47), and only a few pages of the filing could be construed as a supplemental complaint. (Doc. 4, PageID 60-63).

Construing these pro se filings liberally, the Undersigned construes the motion (Doc. 4) as including a motion to amend the Complaint to include additional information under Fed. R. Civ. P. 15(a)[1] and **GRANTS** it. The following documents will be referred to together as the Combined Complaint and will be screened together below:

1. the original Complaint (Doc. 1-1, PageID 10-16),

2. the first set of attachments (Doc. 1-1, PageID 17-35),

3. the Amendment (Doc. 4, PageID 45, 60-63), and

4. the second set of attachments (Doc. 4, PageID 51-59, 64-138).

The Clerk is **DIRECTED** to file this Combined Complaint on the docket.

## III. Parties and Claims

Plaintiff Brown has named twenty-five or twenty-six[2] defendants in his Combined Complaint. (Doc. 1-1, PageID 13-14; Doc. 4, PageID 60). Most appear to be employees of the Ohio Department of Rehabilitation and Correction ("ODRC") and employed at SOCF. Plaintiff has also named the Ohio Governor and the Director of the ODRC as defendants. (Doc. 1-1,

---

[1] Plaintiff seeks to supplement under Fed. R. Civ. P. 15(c), but likely means Fed. R. Civ. P. 15(d) concerning supplemental pleadings. Under that part of the rule, "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event *that happened after the date of the pleading* to be supplemented." (Emphasis added). The events described in Doc. 4 did not occur after the Original Complaint was filed, but instead appear to be the same events (or events contemporaneous to those events) described in the Original Complaint. Thus, Fed. R. Civ. R. 15(d) does not appear to apply.

[2] Plaintiff names "Capt Dyer" in his original Complaint (Doc. 1-1, PageID 14), and "Capt Dry" in his Amendment (Doc. 4, PageID 60). In the body of the Complaint, he refers to a person named "Capt Dryer." (Doc. 4, PageID 61). These appear to be the same person. (*See* Summons to "Captain Dryer (Dyer)," Doc. 4, PageID 153).

PageID 14; Doc 4, PageID 60).  Some defendants have specific allegations directed toward them; some do not.[3]

Plaintiff alleges:

> Since I've been in SOCF I've been harassed and antagonized by SOCF staff b/c of me attempting to sue RCI… I've been refused legal services on numerous occasions. I['ve] been a victim of unnecessary [use of force] in which a C/O who gave me nerve damage didn't file a report and the admin. is not giving me his name so I can do what is proper. . . .   My mail has been tampered [with]. . . .

(Doc. 1-1, PageID 15).  In his Amendment (Doc. 4), Plaintiff lays out his claims in slightly more detail.  He alleges that he (and five other inmates[4]) were transferred from RCI to SOCF in September 2021 "in the most unpresidented (sic) way."  (Doc. 4, PageID 61).  Shortly thereafter, Plaintiff alleges that he was harassed, threatened, and retaliated against by Defendant Officer D. Deemer.  (*Id.*).  In an incident in January 2022, force was used against him "unnecessarily" by a

---

[3] The written portion of the Combined Complaint encompasses only a few pages (Doc. 1-1, PageID 10-16; Doc. 4, PageID 45, 60-63), with many pages of attachments (Doc. 1-1, PageID 17-35; Doc. 4, PageID 51-59, 64-138).  This Court may review the attachments in determining whether Plaintiff states a claim.  *See Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002, at *2 (6th Cir. May 23, 2018) ("a district court evaluating whether a complaint fails to state a claim may consider 'any exhibits attached' to the complaint") (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).  But the attachments are not the claims themselves.  *See Mahone v. Manning*, No. 2:20-cv-2493, 2022 WL 969715, at *3 (W.D. Tenn. Mar. 30, 2022) ("To the extent [plaintiff] seeks to have the Exhibits' contents serve as his § 1983 claims, [his] effort is not well taken. [Plaintiff] did not sign the Exhibits as his allegations in this case pursuant to Fed. R. Civ. P. 11(a). Furthermore, [Plaintiff] may not place a burden on the Court and the Defendants to guess the § 1983 claims Plaintiff asserts by dissecting the Exhibits' numerous grievance forms. *See Pliler v. Ford*, 542 U.S. 225, 231 (2004); *Payne v. Secretary of Treasury*, 73 F. App'x 836, 837 (6th Cir. 2003).").  The Undersigned will refer to the attachments to the Combined Complaint where they are legible and clearly correspond to claims made in the Combined Complaint.  However, the Undersigned will not search the attachments to create claims for Plaintiff or guess what claims Plaintiff may want to raise.  *See Leeds v. City of Muldraugh*, 174 F. App'x 251, 255 (6th Cir. 2006) (noting that, despite the leniency afforded to *pro se* plaintiffs, the Court is "not require[d] to either guess the nature of or create a litigant's claim.").

[4] While Plaintiff can arguably raise a claim about his own injuries (subject to the limitations discussed below), he lacks standing to raise claims on behalf of others.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (standing encompasses, among other things, "the general prohibition on a litigant's raising another person's legal rights") (citations omitted); *Corn v. Sparkman*, 82 F.3d 417, 1996 WL 185753, at *1 (6th Cir. Apr. 17, 1996) (unpublished table decision) ("A prisoner cannot bring claims on behalf of other prisoners.  A prisoner must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights.") (citation omitted).  More specifically, a prisoner does not have standing to bring a § 1983 claim on behalf of others.  *See Barnett v. Luttrell*, 414 F. App'x 784, 787 (6th Cir. 2011) (citing *Jones v. Caruso*, 569 F.3d 258, 276-77 (6th Cir. 2009)).  Any such claims on behalf of other inmates should be dismissed.

John Doe Defendant, named as the "C/O who had my left hand on 1-26-22." (Doc. 4, PageD 60, 62).

Plaintiff alleges issues with being refused his right to go on suicide watch, to begin his hunger strike, to have a phone call while on "RH status," to access legal services, and other issues. (Doc. 4, PageID 61-63). He raises two issues with the handling of his mail. (*Id*., PageID 62-63). Finally, Plaintiff asserts that since he arrived at SOCF, he has "been shown indifference" by several defendants with respect to the handling of his informal complaints, grievances, and other communications with SOCF staff. (Doc. 4, PageID 63).

Plaintiff appears to seek $750,000 in damages. (Civil Cover Sheet, Doc. 1-2, PageID 37). He also seeks declaratory and injunctive relief, as well as a temporary restraining order and a preliminary injunction. (Doc. 4, PageID 45). The scope of the requested relief is not spelled out in his Combined Complaint (*see* Doc. 1-1, PageID 16), but his motion for a temporary restraining order and preliminary injunction (Doc. 5) contains additional details. In that motion, he asks for a temporary restraining order "against Warden Ron Erdos and all his staff placing plaintiff in protective custody or in lieu transferring plaintiff to another facility." (Doc. 5, PageID 236).

## III. Discussion

Plaintiff brings his claims under 42 U.S.C. § 1983. (Doc. 4, PageID 45). "Section 1983 authorizes a 'suit in equity, or other proper proceeding for redress,' against any person who, under color of state law, 'subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution.'" *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To state a cause of action under § 1983, a plaintiff must allege: "(1) a deprivation of a right secured by the Constitution or laws of the United States (2)

caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citation omitted).

A plaintiff suing several defendants must describe in the complaint how <u>each defendant</u> violated his or her rights. "The Sixth Circuit 'has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did that violated the asserted constitutional right.'" *Reid v. City of Detroit*, No. 18-13681, 2020 WL 5902597, at \*6 (E.D. Mich. Oct. 5, 2020) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)) (emphasis in original). "Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978)). Thus, "[w]here a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints." *Catanzaro v. Harry*, 848 F. Supp. 2d 780, 791 (W.D. Mich. 2012).

Finally, while pro se pleadings are liberally construed, "[t]he Court is 'not required to conjure up allegations not pleaded or guess at the nature of an argument.'" *Bender v. Dep't of Veteran's Affairs*, No. 3:20-cv-441, 2021 WL 1087365, at \*1 n.1 (S.D. Ohio Mar. 22, 2021) (quoting *Brown v. Wal-Mart Stores, Inc.*, 507 F. App'x 543, 547 (6th Cir. 2012)). "In other words, 'while [a *pro se*] plaintiff is not required to recite chapter and verse of the statute upon which he relies, he must provide the court and the defendant with sufficient information about the basis for his claim to satisfy federal notice pleading requirements.'" *Bender*, 2021 WL

1087365, at *1 n.1 (quoting *Hawkins v. Youngstown Mun. Court*, No. 4:12-cv-1029, 2012 WL 4050167, at *2 (N.D. Ohio Sept. 13, 2012)).  The claims pled by Plaintiff are discussed next.

      A.    **Claim(s) against Officer Dustin Deemer**

In his amendment to the Complaint, Plaintiff alleges that Defendant Deemer harassed, threatened, and retaliated against him.  (Doc. 4, PageID 61).  In his original Complaint, Plaintiff also vaguely alleged that "Since I've been in SOCF I've been harassed and antagonized by SOCF staff b/c of me attempting to sue RCI."  (Doc. 1-1, PageID 11).  It is not clear if this initial statement is a reference to Defendant Deemer or others.  Documents attached to the Complaint reflect Plaintiff's allegations that Deemer destroyed some of Plaintiff's personal property, including his legal work (Doc. 1-1, PageID 18; Doc. 4, PageID 55, 132, 135), made derogatory remarks about his race and religion (Doc. 4, PageID 132, 135, 136), and notably, told Plaintiff that "he [Deemer] was going to get me for his buddies at RCI…"  (Doc. 4, PageID 55, 132, 136; Doc. 1-2, PageID 18).  Plaintiff also alleges in these documents that Deemer used force against him, including OC spray.  (Doc. 4, PageID 137).

Without the benefit of an Answer or further briefing, the Undersigned concludes that Plaintiff's First Amendment retaliation claim against Deemer may **PROCEED** to further development at this time.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) ("A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.").  The Undersigned expresses no opinion on the merits of this claim.

The other allegations against Deemer, while they may be relevant to Plaintiff's retaliation claim, do not state free-standing claims for "harassment," use of excessive force, destruction of personal property, or access to the courts, for the reasons discussed next.

First, "[h]arassing or degrading language by a prison official, while unprofessional and despicable, does not amount to a constitutional violation." *Mallory v. Smith,* No. 3:17-cv-P253, 2017 WL 3484690, at *3 (W.D. Ky. Aug. 14, 2017) (collecting cases); *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief."). Likewise, "verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment." *Snelling v. Smith*, No. 1:16-cv-656, 2016 WL 6518264, at *6 (W.D. Mich. Nov. 3, 2016) (citing *Ivey*, 832 F.2d at 955).  This includes the use of racial slurs.  *See Millay v. Wiggins*, No. 4:21-cv-P116, 2021 WL 5763562, at *2 (W.D. Ky. Dec. 3, 2021) (and cases cited therein) (defendant's use of a racial slur was "unprofessional and deplorable" but "fails to give rise to a constitutional claim"); *see also Jackson v. Madery*, 158 F. App'x 656, 659 (6th Cir. 2005), *abrogated on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018) ("vague, conclusory allegations of racial discrimination are not enough to state an equal protection claim.").  Here, while problematic and potentially relevant to the retaliation claim that is proceeding, these allegations do not independently state a constitutional claim.

Second, the Combined Complaint includes insufficient factual material to state an excessive force claim against Deemer.  There is nothing in the written portion of the Complaint

expressly raising such a claim against him.[5]  (Doc. 1-1, PageID 15; Doc. 4, PageID 61-63).

However, a document attached to the Complaint states that "on 12-4-21 force was used on me by

C/O D. Deemer[.]"  (Doc. 4, PageID 137).  The date of this incident corresponds to Plaintiff's

statement in the Complaint that "On 12-4-21 I was retaliated against by Officer D. Deemer."

(Doc. 4, PageID 61).

 The Eighth Amendment protects prisoners from the use of excessive force and

unwarranted physical assaults by prison officials.  *See generally Farmer v. Brennan*, 511 U.S.

825, 833-34 (1994) (citing cases).  The "core judicial inquiry" when a prison official is accused

of using excessive force is "whether force was applied in a good-faith effort to maintain or

restore discipline, or maliciously and sadistically to cause harm."  *Wilkins v. Gaddy*, 559 U.S. 34,

37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).  In examining the force used,

"the Court must consider the need for the use of force; the relationship between that need and the

type and amount of the force used; the threat reasonably perceived by the official; and the extent

of the injury inflicted."  *Clark v. Burke*, No. 1:16-cv-547, 2017 WL 397407, at *4 (S.D. Ohio

Jan. 10, 2017), *adopted*, 2017 WL 386838 (S.D. Ohio Jan. 27, 2017) (citing *Hudson*, 503 U.S. at

7; *Whitley v. Albers*, 475 U.S. 312, 319-321 (1986)).  The bare statements in the Combined

Complaint do not provide sufficient factual material to plausibly suggest that the force used by

Deemer was excessive and violated the Eighth Amendment, or allow the Court to analyze these

factors.  Thus, like the harassment allegations, while these events may potentially be relevant to

Plaintiff's retaliation claim, he has not independently stated an excessive force claim under the

Eighth Amendment against Deemer.

---

[5] Plaintiff does attempt to state an excessive force claim against a John Doe Defendant.  (Doc. 4, PageID 62).  That
claim is discussed in Section III.B.

Third, Plaintiff's allegations that Deemer destroyed some of his personal property, including his toothpaste, deodorant, soap, legal work, and religious material (Doc. 4, PageID 55, 132, 135) fail to state a constitutional claim. "Short term deprivations of toilet paper, towels, sheets, blankets, mattresses, toothpaste, toothbrushes and the like do not rise to the level of a constitutional violation." *Gilland v. Owens*, 718 F. Supp. 665, 685 (W.D. Tenn. 1989). Plaintiff does not allege that he was deprived of hygiene items for any length of time, or any significant length of time. *See Richmond v. Settles,* 450 F. App'x 448, 455 (6th Cir. 2011) (rejecting Eighth Amendment claim where the plaintiff was denied toilet paper, soap, toothpaste, toothbrush, running water, and the ability to shower for six days); *see also Harris v. Fleming*, 839 F.2d 1232, 1234-36 (7th Cir. 1988) (rejecting Eighth Amendment claim where the plaintiff was denied toilet paper for five days and denied soap, toothpaste, and toothbrush for ten days).

Relatedly, claims for destruction of personal property under the Fourteenth Amendment require a plaintiff to "plead . . . that state remedies for redressing the wrong are inadequate" in order to state a claim. *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983). *See also Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *rev'd on other grounds, Daniels v. Williams,* 474 U.S. 327, 330-31 (1986). Here, Plaintiff has not done so, but has simply alleged that his property was destroyed. This bare allegation fails to state a claim. *Darling v. Lake Cnty. Bd. of Comm'rs*, No. 1:12-cv-194, 2012 WL 1902602, at *17 (N.D. Ohio May 25, 2012) (citing *River City Capital, L.P. v. Bd. of Cnty. Com'rs, Clermont Cnty., Ohio*, 491 F.3d 301, 306 (6th Cir. 2007) (citing *Parratt*, 451 U.S. 527)) (a plaintiff "does not state a due process claim merely by alleging the deprivation of property").

Finally, Plaintiff fails to state a claim on which relief may be granted based on his allegation that his legal papers were destroyed. Under the First Amendment, prisoners have a

11

fundamental right of access to the courts.  *Lewis v. Casey*, 518 U.S. 343, 346 (1996).  "The United States Supreme Court has established that, in order to have standing to bring a claim for denial of access to the courts, the inmate must establish that he suffered an actual injury as a result of the alleged denial."  *Winburn v. Howe*, 43 F. App'x 731, 733 (6th Cir. 2002) (citing *Lewis*, 518 U.S. at 349).  "Actual injury" is not shown "without a showing that such a claim has been lost or rejected, or that the presentation of such a claim is currently being prevented."  *Root v. Towers*, No. 00-1527, 2000 WL 1888734, at *1 (6th Cir. Dec. 21, 2000).  "In other words, an inmate who claims that his access to courts was denied fails to state a claim 'without any showing of prejudice to his litigation.'"  *Wilburn*, 43 F. App'x. at 733 (quoting *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)).  Here, Plaintiff has not alleged any facts showing he suffered any actual injury as a result of the destruction of his legal materials, such as showing he has been unable to file court pleadings, missed court deadlines, or had a case dismissed in any nonfrivolous legal proceeding based on the destruction of his papers.  Without such allegations, Plaintiff's complaint fails to state a claim for relief for a denial of access to the courts under the First Amendment.

The Undersigned accordingly concludes that the retaliation claim against Defendant Deemer should proceed, but the other claims against him should be dismissed.

### B.    Excessive Force Claim against the John Doe Defendant

Plaintiff names as a defendant "the C/O who had my left thumb – 1-26-2022 – I'm being refused his name."  (Doc. 1-1, PageID 14; *see also* Doc. 4, PageID 60 (naming the "C/O who had my left hand on 1-26-22")).  He alleges:  "I [have] been a victim of unnecessary U.O.F. [use of force] in which a C/O who gave me nerve damage didn't file a report and the admin. is not giving me his name so I can do what's proper."  (Doc. 1-1, PageID 15).  He also says that on January 26, 2022, "C/O Murray showed racial & religious discrimination.  I asked for a

12

supervisor to deescalate the situation yet [the] supervisor was indifferent and escorted me to the hole using force (unnecessarily) resulting in injury." (Doc. 4, PageID 62). A document attached to the Complaint reflects that Plaintiff asked for a copy of the incident report related to the event about his "left arm," but the response was—to the extent it can be read—that "The secretary did research this request and was unable to locate an incident report, the record does not exist." (Doc. 4, PageID 52).

Even assuming that these allegations about Plaintiff's "left arm," "left hand," and "left thumb" are all referring to the same incident, they fail to allege a plausible excessive force claim against the John Doe Defendant under the Eighth Amendment. There is no information about Plaintiff's behavior, how John Doe perceived Plaintiff's behavior, how John Doe used force, or how the alleged injury occurred. There are simply not "enough facts [in the Combined Complaint] to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conclusory allegations that force was used and injury resulted are insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555-556); *Riddle v. Rivard*, No. 14-11092, 2015 WL 74822, at *2 (E.D. Mich. Jan. 6, 2015) (dismissing vague claim that an officer physically assaulted plaintiff as insufficient under § 1983 because "conclusory allegations without material supporting facts are insufficient to state a claim"). The excessive force claim against the John Doe Defendant should therefore be dismissed.

**C.**   **Grievance Procedure Claims against Mahlman, Sparks, Whitman, and Wilson**

Plaintiff makes several statements about Defendants Mahlman, Sparks, Whitman, and Wilson that appear to concern their role within SOCF's grievance procedure. (Doc. 4, PageID 63). Among other things, he alleges that these defendants have shown him "indifference" or

"major indifference" because of their "faulty training." (*Id.*).  This "indifference" appears to relate to what Plaintiff perceives as their non-responsiveness or uncooperativeness to his informal complaints, grievances, and other communications.  Plaintiff also alleges that defendant Wilson retaliated against him by restricting his access to the informal complaint resolution process.  (*Id.*; *see also* Dec. 29, 2021 Letter from Wilson to Brown, Doc. 4, PageID 74-75 (noting that Plaintiff has filed twenty-five informal complaints in three months but refused to cooperate in attempts to resolve some of them, and was therefore restricted from filing certain complaints for 90 days)).  Plaintiff in particular faults Wilson because he hired (at least some of) the others in this group.  (Doc. 4, PageID 63).

Plaintiff fails to state a claim under § 1983 for the denial of his informal complaints and grievances, for the defendant's alleged indifference to them, or for his lack of access to the institutional grievance procedure.  "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.,* 73 F. App'x 839, 841 (6th Cir. 2003). And, "[t]he 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).  This is because a § 1983 claim requires a plaintiff to allege the deprivation of a *constitutional* right.  *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001).  But "there is no inherent constitutional right to an effective prison grievance procedure." *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003).  Without a constitutional right to point to, a plaintiff cannot allege the denial of a constitutional right.

Therefore, even if the institutional grievance procedure at SOCF is ineffective, or has not provided him relief, or he cannot access it as he would like, his allegations do not state a claim of

*constitutional* dimension. These Defendants cannot be held liable under § 1983 for failing to respond as Plaintiff would prefer. *See Lee v. Mich. Parole Bd.*, 104 Fed. App'x. 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance.").

With respect to Plaintiff's allegation that Defendant Wilson retaliated against him by temporarily restricting his access to the informal complaint resolution process (Doc. 4, PageID 63; Doc. 4, PageID 74-75), any retaliation claim fails because he cannot show that Wilson took "an adverse action . . . against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct," an element of a retaliation claim. *Thaddeus-X*, 175 F.3d at 394. The Sixth Circuit has specifically held that "[b]eing placed on modified access status [with respect to the grievance procedure] would not deter a person of ordinary firmness from pursuing non-frivolous grievances against prison officials, within the courts or the prison administrative system." *Jackson*, 158 F. App'x at 660. Accordingly, all the claims against Defendants Mahlman, Sparks, Whitman, and Wilson concerning the institutional grievance procedure should be dismissed.

**D.   Failure to Protect or Deliberate Indifference to Serious Medical Needs Claims against Dryer, Bloc, Born, Lewis, Williams, Hale, and Sammons**

Plaintiff alleges that Defendants Dryer, Bloc (or Block), Born, Lewis, Williams, and Hale "refused me my right to go on suside (sic) watch." (Doc. 4, PageID 61). A member of the medical staff, Defendant Sammons, "also refused me to go on suside (sic) watch AND denied me medical despite my hand bleeding. (*Id.*). No additional information is in the written portion of the Complaint, but a document attached to the Amendment (labeled "FAILURE TO PROTECT/CHEMICAL TORTURE") states:

> On the night of 12-4-21 and the wee morning hours of 12-5-21 I stopped C/O Born, C/O Lewis, and the African American Male C/O (I don't know his name) I told

each C/O I was susidal (sic) …C/O Born stated he told Lewis b/c C/O Born himself is on probation. . . .  C/O Lewis did come and talk to me and he stated that he informed a LT. whom he believes was C/O Prator and he also said that Capt Dryer was notified (C/O Born state he talked to said Capt also) the African American C/O told me that I wasn't going on watch that night and that it was out of his hand. . . . [I]f you look at camera in J2 [illegible] you'll see that those said C/O[s] stopped and talked to me multiple times that said night[.]

(Doc. 4, PageID 130).  In another attachment, Plaintiff said that he told Defendant Hale and another officer that he was suicidal and feared for his life and "they said they didn't care. . . . When Medical came to J2 strip out cage he only asked me was I on the case load and didn't honor me telling him I was susidal (sic) and fear for my life."  (Doc. 4, PageID 138).  Plaintiff apparently did go on suicide watch two shifts later.  (Doc. 1-1, PageID 28).  He adds that the officers also "didn't let me go to medical despite bleeding and dripping blood."  (Doc. 4, PageID 138).

"The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  They also have an obligation "to take reasonable measures to guarantee the safety of the inmates" in their custody.  *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).  Plaintiff's claims along these lines fail, however, because he does not allege that he suffered any physical injury from these Defendants' initial refusal to put him on suicide watch.  *See Hairston v. Maria*, No. 2:18-cv-378, 2018 WL 6628977, at *8 (S.D. Ohio Dec. 19, 2018) (citing 42 U.S.C. § 1997e(e); *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010)) ("Because Plaintiff has not alleged that he suffered any physical injury as a result of Defendants' alleged failure to protect him, he has failed to state a claim upon which relief may be granted.").

16

Plaintiff also has provided insufficient information to plausibly allege, with respect to his bleeding hand, that his medical needs were objectively sufficiently serious.  *See Greene v. Crawford Cnty., Michigan*, 22 F.4th 593, 607 (6th Cir. 2022) (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) ("A serious medical need is one 'that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'").  But "[m]inor cuts, bruises, and injuries do not constitute such a serious medical need." *Crowder v. Hamilton Cnty. Sheriff's Office*, No. 1:11-cv-306, 2012 WL 1866514, at *3 (E.D. Tenn. May 22, 2012).  Here, the nature of Plaintiff's injury is unknown, but the fact that his hand was bleeding does not necessarily mean that he had a serious medical need.  *Id.* at *3-4 ("While Plaintiff's injury was no doubt bleeding and presumably, although Plaintiff does not make such an allegation, painful to some extent, the Court does not view a bleeding finger, in and of itself, as a serious medical need for purposes of a federal constitutional violation.  Indeed, most non-prisoners would not even have a cut and bleeding finger treated at a hospital, clinic, or doctor's office unless the person thought it needed stitches or that the finger was broken; neither of which Plaintiff alleges.").  Plaintiff's claims for failure to protect and deliberate indifference to a serious medical need should therefore be dismissed.

    **E.**    **Conditions of Confinement Claims**

Plaintiff alleges that on December 5, 2021, he was placed in an observation cell contaminated with blood and OC spray.  (Doc. 4, PageID 61).  The next day, he was placed in a different cell that was "inoperable," where he spent nine days.  (*Id.*).  He explains that the cell had a moderate to severe "leak from the pipe chase when someone else flushes [the] toilet."  (*Id.*).  A document attached to the original Complaint describes this as "toilet water leaking from my vent."  (Doc. 1-1, Page ID 21, 28).

It is well-settled that "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Pfeiffer v. Butler Cnty. Sheriff Dep't.*, No. 1:10-cv-672, 2012 WL 1203557, at *8 (S.D. Ohio Apr. 10, 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The Eighth Amendment, which protects prison inmates from "cruel and unusual punishments" and deliberate indifference, also protects them against "extreme deprivations" that deny "the minimal civilized measure of life's necessities" while in prison. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) and *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

As noted, "*extreme* deprivations are required to make out a conditions-of-confinement claim." *Hudson*, 503 U.S. at 9 (emphasis added). "Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency." *Pena v. Brown*, No. 2:20-cv-250, 2021 WL 4350124, at *5 (W.D. Mich. Sept. 23, 2021) (collecting cases).

Conditions of confinement claims "are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount." *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017). "In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 733 (9th Cir. 2000)). For example, "[a] filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978).

18

Plaintiff's allegation that he was in a cell contaminated with blood and OC spray for one day does not rise to the level of an Eighth Amendment violation. *See Whitnack v. Douglas Cnty.*, 16 F.3d 954, 958 (8th Cir. 1994) (holding that a deplorably filthy and patently offensive cell with excrement and vomit was not unconstitutional because these conditions lasted for only 24 hours). Likewise, his claim that the plumbing leaked in his cell for nine days does not state a sufficiently serious deprivation. *See Geder v. Godinez*, 875 F. Supp. 1334, 1341 (N.D. Ill. 1995) (allegations of unsanitary conditions, "including the presence of defective pipes, sinks, and toilets, improperly-cleaned showers, a broken intercom system, stained mattresses, accumulated dust and dirt, and infestation by roaches and rats," are not sufficiently serious to satisfy the objective component of an Eighth Amendment violation); *Womble v. Logan*, No. 4:15-cv-072, 2018 WL 1627807, at *2 (E.D. Tenn. Apr. 4, 2018) (plaintiff's allegations that "some jail cells do not have hot or cold water and that the jail has toilets that leak 'sewer water' through which Plaintiff and other inmates have to walk" fails to state an "extreme deprivation" and a claim under the Eighth Amendment).

Notably, Plaintiff does not allege that the leak was voluminous, contained human waste, or smelled badly, or that it caused standing water in the cell, or that he suffered any physical injury because of it. *See generally Still v. Davis*, No. 1:16-cv-640, 2018 WL 1202827, at *5 (S.D. Ohio Mar. 8, 2018) (Report and Recommendation), *adopted*, 2018 WL 2943227 (S.D. Ohio June 12, 2018) ("Colloquially speaking, the 'yuck' factor influences the assessment of the severity of the deprivation to sanitation and level of risk to health and safety. Thus, cases involving excrement or feces, or raw sewage from toilet overflows, tend to evoke greater concern than cases like the one presented, involving leaky pipes that result in a lesser degree of non-potable or contaminated water. . . . On similar facts involving leaks of unsanitary water from

damaged pipes, courts have held that even fairly long exposure will not satisfy the objective component of the Eighth Amendment in the absence of any physical harm.").  Because Plaintiff's allegations in this respect are not objectively sufficiently serious and do not rise to the level of an Eighth Amendment violation, his conditions of confinement claims should be dismissed.

        **F.**    <u>**Institutional Mail and Legal Mail Issues**</u>

Plaintiff asserts that on February 9, 2022, he "gave a letter w/a signed cash slip for postage [but] the mailroom never received the cash slip nor letter which shows that [his] mail is being tampered with."  (Doc. 4, PageID 62).  This allegation fails to state a claim for two reasons.  First, Plaintiff fails to allege that any named Defendant tampered with his mail.  This failure to identify a defendant acting under color of state law is a failure of the required "basic pleading essential[s]" and subjects his claim to dismissal.  *See Sango v. Ault,* No. 1:14-cv-345, 2014 WL 1744726, at *3 (W.D. Mich. Apr. 30, 2014) (citing *Twombly*, 550 U.S. at 544) ("It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.").

Second, to the extent that Plaintiff's bare allegation could be liberally construed as a claim for denial of access to the courts, he fails to sufficiently plead such a claim.  "To establish an access to the courts violation under § 1983, a plaintiff must prove that the violation was intentional, not merely negligent."  *Brooks v. Scherf*, No. 2:09-cv-12377, 2009 WL 1884151, at *2 (E.D. Mich. June 29, 2009) (summarily dismissing complaint under § 1915 that only alleged one piece of mail was lost).  Plaintiff's speculation that someone must be tampering with his mail fails to satisfy this element.  *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level").

Further, as discussed above, a plaintiff must also "establish that he suffered an actual injury as a result of the alleged denial" of access.  *Winburn v. Howe*, 43 F. App'x 731, 733 (6th

Cir. 2002) (citing *Lewis v. Casey*, 518 U.S. 343, 349 (1996)). *See also Carlton v. Jondreau*, 76 Fed. App'x. 642, 643 (6th Cir. 2003) (holding that prison officials did not violate an inmate's First Amendment rights by negligently depriving him of physical possession of one piece of legal mail, where deprivation did not interfere with any ongoing litigation). No facts are pled to support either element.

The same analysis would apply to Plaintiff's other vague mail-related allegation: "there has been an issue w/ the mailroom not treating <u>LEGAL MAIL</u> in the appropriate manner." This brief statement simply fails to provide a sufficient factual basis for a § 1983 claim. Without more, Plaintiff has failed to state a claim.

### G. <u>Violations of State Policy Claims against Pollard, Davis, Hale, and Reuter</u>

Plaintiff alleges or suggests that Defendants took certain actions in violations of ODRC policy. Specifically, he alleges that Defendant Pollard was the driver who transferred him from RCI to SOCF in an unprecedented way, "violating procedure that normally occurs . . . when transferring WE Inmates from RCI." (Doc. 4, PageID 61; Doc. 4, PageID 134). He also alleges that on one occasion, he "didn't get a chance to wash the OC spray off as ODRC policy states I can…" (Doc. 4, PageID 137).[6] He also appears to allege some impropriety with respect to the failure to file an incident report after the use of force by the John Doe Defendant. (Doc. 1, PageID 15; Doc. 4, PageID 52).[7] He also complains that officers "failed to file an incident report after I missed my 9 meals to start my hunger strike." (Doc. 4, PageID 62; *see also* Doc. 4, PageID 98 (letter notifying someone that plaintiff "sacrificed my nine meals 1-28 through 1-30-22 and no incident report was filed and your staff is being indifferent[.]")).[8] He alleges that he

---

[6] Plaintiff may be referring to ODRC Policy No. 104-TAW-03 (DPCS OC Spray).
[7] Plaintiff may be referring to ODRC Policy No. 63-UOF-02 (Use of Force Report).
[8] Plaintiff may be referring to ODRC Policy No. 68-MED-17 (Hunger Strike).

was not given a phone call after 30 days on Restricted Housing or "RH status." (Doc. 4, PageID 62). Finally, he alleges the denial of legal services because he was not given free legal packets with the frequency he desired; he could request (and receive) one only every thirty days. (Doc. 1-1, PageID 15; Doc. 4, PageID 62, 57, 64, 92, 94, 96).[9]

Section 1983 does not provide a remedy for alleged violations of state laws or regulations. *See Williams v. Burgess*, No. 5:21-cv-99, 2021 WL 5816830, at *4 (W.D. Ky. Dec. 7, 2021) (citing *Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007)) ("The purpose of § 1983 is to remedy violations of federal law, not state law."); *Lewellen v. Metro. Gov't of Nashville*, 34 F.3d 345, 347 (6th Cir. 1994) ("Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate"). "Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure." *White v. Perron*, No. 2:20-cv-247, 2021 WL 3855589, at *9 (W.D. Mich. Aug. 30, 2021) (citing *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) and other cases). Thus, the "Defendants' alleged failure to comply with [a state] administrative rule or policy does not itself rise to the level of a constitutional violation." *Williams v. Burke*, No. 2:08-cv-123, 2009 WL 1788374, at *1 (W.D. Mich. June 18, 2009) (collecting cases). Plaintiff's allegations or suggestions here that Defendants failed to follow state policies therefore do not independently state a claim for a violation of *federal* law that can be pursued in a § 1983 action. *See Burgess,* 2021 WL 5816830, at *4 ("to the extent that Williams identifies state policies as conferring a right for a § 1983 claim, the Court dismisses that claim"). These claims, which

---

[9] Plaintiff may be referring to ODRC Policy No. 59-LEG-01 (Inmate Access to Court and Counsel).

appear to be raised against Defendants Pollard (transportation), Davis (phone call), Hale (hunger strike), and Reuter (legal packet), should be dismissed.

### H.   Claims against Governor Mike DeWine, ODRC Director Annette Chambers Smith, and Warden Ron Erdos

Although these three individuals are named as Defendants, Plaintiff does not allege that they took any action with respect to him and therefore fails to state a claim against them. "Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978)). Plaintiff does attach letters he wrote to DeWine and Chambers Smith, labeled "THIS IS YOUR DUTIFUL NOTIFICATION," to his Combined Complaint. (Doc. 4, PageID 70-73). To the extent he would seek to hold them liable for not responding to these letters, he fails to state a claim. *See Harris v. Ohio Adult Parole Auth.*, No. 2:21-cv-1401, 2021 WL 3169156, at *3 (S.D. Ohio July 26, 2021) (dismissing a § 1983 claim where plaintiff alleged that a Bureau Chief failed to respond "to personal letters Plaintiff sent to him" because "§ 1983 requires more than just a failure to respond to correspondence.").

It appears that Plaintiff seeks to hold these Defendants responsible on a *respondeat superior*, vicarious liability, or supervisory liability basis for the behavior of others. But defendants "cannot be held liable under section 1983 on a *respondeat superior* or vicarious liability basis." *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992)). "Rather, individuals sued in their personal capacity under § 1983 are liable only for their own unconstitutional behavior." *Hollis v. Erdos*, 480 F. Supp. 3d 823, 833 (S.D. Ohio May 12, 2020) (citing *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011)).

To the extent that these Defendants hold may supervisory positions over other Defendants, there are no allegations in the Complaint that would allow them to be held liable on that basis.  To do so, Plaintiff must allege "'[a]t a minimum' . . . that the defendant[s] 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'"  *Graves v. Malone*, 810 F. App'x 414, 420 (6th Cir. 2020), *cert. denied sub nom. Hedger v. Graves*, 141 S. Ct. 2698 (2021) (quoting *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016)).  No such allegations are made in the Complaint.  Therefore, any claims against DeWine, Chambers Smith, and Erdos should be dismissed.

## I.     Claims against the Remaining Defendants

The Undersigned in unable to discern any claims in the Combined Complaint against the following named Defendants and declines to guess why Plaintiff named them:  UMA Jeremy Oppy, Sergeant Barney, Sergeant Michael Willow, Captain Frazy, or Case Manager Rush.  *See Bender v. Dep't of Veteran's Affairs*, No. 3:20-cv-441, 2021 WL 1087365, at *1 n.1 (S.D. Ohio Mar. 22, 2021) (quoting *Brown v. Wal-Mart Stores, Inc.*, 507 F. App'x 543, 547 (6th Cir. 2012)) ("[T]he Court is 'not required to conjure up allegations not pleaded or guess at the nature of an argument.'").  Because Plaintiff has not articulated any claims against these Defendants (or identified any of his articulated claims as being raised against them), they should be dismissed from this action.

Plaintiff does mention Defendant Murray in his Complaint, saying that on "1-26-22, C/O Murray showed racial and religious discrimination."  (Doc. 4, PageID 62).  This brief, vague statement fails to state a claim against Murray.  *See Success v. Macauley*, No. 1:21-cv-254, 2021 WL 5002311, at *19 (W.D. Mich. Oct. 28, 2021) (plaintiff's conclusory allegation that defendants engaged in racial discrimination fails to state an equal protection claim).  Here, Plaintiff does not say *how* Murray showed discrimination.  A discriminatory comment, although

24

problematic, does not state a constitutional claim.  *See Brown v. Toombs*, 983 F.2d 1065, 1993 WL 11882, *1 (6th Cir. 1993) (unpublished table case) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").  Accordingly, the claim against Murray should also be dismissed.

Finally, Plaintiff alleged a threat by Defendant Sparks.  (Doc. 4, PageID 62 ("U.M. Sparks then took it upon him self to threaten me stating the C/Os are going to get me.")).  That claim, while perhaps relevant to the retaliation claim against Deemer, fails to state an independent claim as discussed above.  *See Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief.").

## IV.    Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction

In his Motion (Doc. 5), Plaintiff alleges, as "Background":

> Since my unpresidented (sic) transfer from RCI to SOCF the date of 9-28-21 I have been a victim of various forms of harassment. I.I.S. Mahlman is and has been extremely indifferent[.] I have been placed on ICR restriction by her and Chief Inspector Roger Wilson and [I am] being denied my rights to file a grievance in a situation where I received nerve damage in my <u>LEFT</u> thumb for a C/O's unnecessary U.O.F. let alone the amount.  I can not complain about my food being tampered w/. I honestly fear that my life or person is not safe while I remain at SOCF. Certain C/Os make threatening comments, racial slurs, and I have been targeted for practicing my religion which lead to my thumb injury that I.I.S. Linnea Mahlman is refusing me grievances for[.] <u>Inappropriate Supervision</u> doesn't have to be filed first w/ a ICR[.] It can and should go directly to the N.O.G. state."

(Doc. 5, PageID 236).[10]  He requests that this Court "issue a TRO against Warden Ron Erdos and all his staff placing plaintiff on protective custody or in lieu transferring plaintiff to another

---

[10] These allegations are repeated, nearly verbatim, in a second page that appears to have been filed in Plaintiff's First Case.  (*See* Doc. 5, PageID 238).

facility for the following reason[.]"  (Doc. 5, PageID 236).  No reason is thereafter stated, but a copy of a Notification of Grievance is attached, complaining about several of the grievance procedure issues discussed above.  (Doc. 5, PageID 239).

Federal Rule of Civil Procedure 65 governs the proper procedures and requirements for the issuance of injunctions and temporary restraining orders.  The purpose of a TRO is "to preserve the status quo so that a reasoned resolution of a dispute may be had."  *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996).  The same standard generally applies to temporary restraining orders and preliminary injunctions.  *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008); *Northeast Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).

In determining whether to grant or deny emergency injunctive relief, the Court must consider four factors: (1) whether the movant has shown a strong or substantial likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without an injunction; (3) whether issuance of an injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of an injunction.  *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689-90 (6th Cir. 2014); *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)).  "These factors are not prerequisites which must be met, but are interrelated considerations that must be balanced together."  *Northeast Ohio Coal. for Homeless*, 467 F.3d at 1010 (quoting *Mich. Coal of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).  A TRO is an "extraordinary and drastic remedy" and should "only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 848-49 (6th Cir. 2017) (quoting *Munaf v.*

*Geren*, 553 U.S. 674, 689-90 (2008); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

Under Fed. R. Civ. P. 65(b)(1), a temporary restraining order may be issued without notice to the adverse parties under certain circumstances. Rule 65(b)(1) provides:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
> **(A)** specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> **(B)** the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65.

Under the circumstances, the Undersigned **RECOMMENDS** that the Court **DENY** Plaintiff's motion. (Doc. 5.) Most of the Motion concerns the grievance procedure and other claims that the Undersigned has recommended be dismissed, and/or concerns Defendants who will no longer be party to this case if the Court adopts this recommendation. Moreover, no clear reason for the request is articulated, and the Undersigned is not convinced, on the documents currently before the Court, that Plaintiff has shown a strong or substantial likelihood of success on the merits. Irreparable injury, or the pressing need to prevent irreparable injury, is also not apparent on this record; the events with Defendant Deemer—the claim that is proceeding at this time—occurred in October and December of 2021. (Doc. 4, PageID 61.)

Finally, with respect to Plaintiff's request for transfer, that portion of the Motion should be denied, as a prisoner has no constitutional right to be incarcerated in a particular facility. *See Hairston v. Sparks*, No. 1:22-cv-104, 2022 WL 1046367, at *4 (S.D. Ohio Apr. 7, 2022) (citing *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986) (denying TRO on this basis).

## V.      Summary and Conclusion

The undersigned Magistrate Judge, having conducted the initial screening of Plaintiff Brown's Combined Complaint as required by law, **THEREFORE <u>ORDERS</u> THAT**:

1.      Plaintiff Brown's retaliation claim against Defendant Deemer shall **PROCEED** at this time.

2.      The United States Marshal shall serve a copy of the Combined Complaint (including attachments, as discussed in Section II), the Order granting Plaintiff *in forma pauperis* status, and this Order and Report and Recommendation upon Defendant Deemer as directed by Plaintiff, with costs of service to be advanced by the United States.  For reference, the Marshal form and Summons form for Defendant Deemer are of record at Doc. 4, PageID 179-180, 205-206.

3.      Plaintiff shall serve upon Defendant or, if appearance has been entered by counsel, upon Defendant's attorney, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to Defendant or Defendant's counsel. Any paper received by a District Judge or Magistrate Judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

4.      Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

5.      Plaintiff shall clearly label any documents submitted for filing in this case with the appropriate case number, and shall file only documents concerning this case under this case number.

Additionally, the undersigned Magistrate Judge **RECOMMENDS** **THAT**:

1.      The Court **DISMISS** all other claims in Plaintiff Brown's Combined Complaint pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B) for failure to state a claim on which relief may be granted.

2.      The Court **CERTIFY** pursuant to 28 U.S.C. § 1915(a)(3) that, for the reasons discussed above, an appeal of any Order adopting this Report and Recommendation would not be taken in good faith, and therefore, deny Plaintiff leave to appeal *in forma pauperis.  See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

3.      The Court **DENY** Plaintiff's motion for a temporary restraining order and preliminary injunction.  (Doc. 5).

**V.      Notice Regarding Objections to this Report and Recommendation**

If any party objects to this Report and Recommendation ("R&R"), the party may serve and file specific, written objections to it within **FOURTEEN (14) DAYS** after being served with a copy thereof.  Fed. R. Civ. P. 72(b).  All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections.  The Court may extend the 14-day objections period if a timely motion for an extension of time is filed.

A Judge of this Court will make a de novo determination of those portions of the R&R to which objection is made.  Upon proper objection, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

29

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R de novo, and will also operate as a waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

July 13, 2022

KAREN L. LITKOVITZ
UNITED STATES MAGISTRATE JUDGE