UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MICHAEL BROWN,<br>  Plaintiff, | Case No. 1:22-cv-239<br>Marbley, C.J.<br>Litkovitz, M.J. |
|   v. | |
| LINNEA MAHLMAN, *et al.*,<br>  Defendants. | **REPORT AND**<br>**RECOMMENDATION** |

This matter is before the Court on defendants' first motion for summary judgment (Doc. 39). Plaintiff filed a response to defendants' motion (Doc. 47) as well as an additional document entitled "rebuttal to defendants' reply" (Doc. 50).

**I. Background**

Plaintiff initiated this action pursuant to 42 U.S.C. § 1983, alleging various violations of his constitutional rights while he was incarcerated at the Southern Ohio Correctional Facility (SOCF). Plaintiff, proceeding pro se, filed a complaint, a supplemental complaint, and a combined complaint with jury demand. (Docs. 4, 8, and 11). The Court previously dismissed all claims except plaintiff's First Amendment retaliation claim against defendant Dustin Deemer and plaintiff's Eighth Amendment excessive force claim against defendant William Jewell. (Doc. 22).

Brown alleges that defendant Deemer harassed and threatened him and destroyed his personal property in retaliation for Brown's lawsuit against corrections officers at Ross Correctional Institution (RCI). (Doc. 4 at PAGEID 55). Specifically, plaintiff alleges that Deemer, during a purported cell search, poured toothpaste and lotion on his mail and legal mail; destroyed his deodorant and soap; and broke his GTL charger and ear buds. (Doc. 47 at PAGEID 587). In addition, Deemer allegedly "put a false ticket on" Brown and sprayed him

with OC spray (Oleoresin Capsicum spray sometimes called "pepper spray") "for no reason." (Doc. 47 at PAGEID 587).

Brown alleges that defendant Jewell bent his thumb backward "as a restraining method" even though Brown was shackled and handcuffed and providing no resistance. (Doc. 12 at PAGEID 423). As a result, Brown claims, he suffered nerve damage to his thumb. (*Id.*). Defendants Deemer and Jewell now move for summary judgment on both claims. (Doc. 39).

**I.      Summary Judgment Standard**

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Id.*; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000). "[W]here, as here, the parties present video evidence, [the Court] 'view[s] the facts in the light depicted by the videotape.'" *Ison v. Madison Loc. Sch. Dist. Bd. of Ed.*, 3 F.4th 887, 892 (6th Cir. 2021) (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)); *White v. Erdos*, No. 21-3169, 2022 WL 554065, at *2 (6th Cir. Jan. 28, 2022).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at

249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, "[f]acts that are not blatantly contradicted by [the evidence] remain entitled to an interpretation most favorable to the non-moving party." *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011). "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Maston v. Montgomery Cty. Jail Med. Staff Pers*., 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

A fact is "material" if its resolution will affect the outcome of the lawsuit. *Beans v. City of Massillon*, No. 5:15-cv-1475, 2016 WL 7492503, at *5 (N.D. Ohio Dec. 30, 2016), *aff'd,* No. 17-3088, 2017 WL 3726755 (6th Cir. 2017) (citing *Anderson*, 477 U.S. at 248). The party who seeks summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 322. To make its determination, the court "need consider only the cited materials, but it may consider other

materials in the record." Fed. R. Civ. P. 56(c)(3). The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter the party's duty on a summary judgment motion to support his factual assertions with admissible evidence. *Maston*, 832 F. Supp. 2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)).

## II. Plaintiff Failed to Offer Sufficient Admissible Evidence

As an initial matter, the undersigned notes that plaintiff has failed to support his opposition to defendants' motion for summary judgment as required by the Federal Rules of Civil Procedure. Specifically, Rule 56(c) provides that a party asserting that a fact is or is not genuinely disputed must support his assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The Court recognizes that plaintiff is proceeding pro se. Regardless, he is required to set forth admissible evidence that supports his claims and raises genuine issues for trial in opposing defendants' properly supported summary judgment motion. *See McKinnie v.*

4

*Roadway Express, Inc.*, 341 F.3d 554, 558 (6th Cir. 2003) (pro se litigants "are not entitled to special treatment, including assistance in regards to responding to dispositive motions.").

On May 12, 2023, the Court notified plaintiff of his obligation to respond to the instant summary judgment motion. (Doc. 40). The notice mailed to plaintiff specifically advised him of his obligation to not rest upon the allegations in his complaint but to provide evidence setting forth specific facts demonstrating the genuine issues(s) for trial. (*Id.*). Plaintiff's response fails to satisfy this obligation. Instead of identifying admissible evidence or submitting his own affidavit or sworn declaration, plaintiff merely recites allegations, some of which were contained in his unsworn complaints. With regard to his Eighth Amendment claim, plaintiff states:

> I am quite sure that c/o Jewell is the man who gave me thumb nerve damage and I recognized him from a signal being called into the housing unit I was at. . . . I will say that yea I am convinced its him even if he says he looked at the DVR. However if wrong then I apologize to that man . . . . I honestly believe its c/o Jewell whom had my left thumb . . . and the incident was on k-side—I was housed in k3 and the signal got called in front of k-1 which is not as far as c/o Jewell made it seems for c/os from the front hallway answered the signal. . . .

(Doc. 47 at 586-87). As to his First Amendment claim, plaintiff stated:

> About c/o Deemer sir before these incidents I hardly ever catch a conduct report in SOCF! So c/o Deemer stating I was causing a disturbance is a complete lie! I barely talk to people as it is . . . This man was harassing me and giving me a hard time the moment I step foot in J3 . . . I understand c/o's are allowed to search cells, person, & property—yet pour toothpaste all over my mail and legal mail along w/ lotion . . . Destroy my deodorants and soap. Pull my GTL charger out the wall and break my ear buds so I can't use the phone and all this is back to back to back before he ultimately put a false ticket on me an sprayed me [with] OC for no reason.

(*Id.* at PAGEID 587).

Although plaintiff is proceeding pro se, he was previously informed of his obligation to provide evidence at the summary judgment stage. He moved for summary judgment twice previously. (Docs. 23 and 37). In recommending that plaintiff's summary judgment motions be

5

denied, the undersigned recited the applicable legal standards and each element on which plaintiff failed to provide evidence. (Doc. 30 at PAGEID 489-93, Doc. 43 at PAGEID 571-73).

Plaintiff objected to the Reports and Recommendations and even filed a declaration reciting that "I do hereby swear by the penalty of p[er]jury outlined in title 18 USCS that [the]forgoing objection letter is accurate and true to the best of my knowledge." (Doc. 46 at PAGEID 584). However, the only relevant factual statement in plaintiff's sworn objection letter provides, "Sir, they did wrong. Deemer started antagonizing me as soon as I came to his block b/c of my issues from RCI and c/o Jewell did not file a use of force report." (Doc. 45 at PAGEID 581).

The Chief District Judge overruled plaintiff's objections and adopted the recommendations that plaintiff's motions for summary judgment be denied for lack of evidence. (Doc. 48). In doing so, he also reiterated the need for plaintiff to present admissible evidence in support of claims against defendants Deemer and Jewell. (Doc. 48 at PAGEID 590-91).

Plaintiff's unsworn complaints, which were not signed under penalty of perjury, do not constitute evidence for summary judgment purposes. *Maston*, 832 F. Supp. 2d at 851-52 (pro se party cannot rely on allegations or denials in unsworn filings when opposing a motion for summary judgment). Although some of the pages are illegible and many are repetitive, plaintiff attached to his complaints various Ohio prison kites and forms used to resolve his grievances and informal complaints against defendant Deemer and many others. (Doc. 4 at PAGEID 54-59, 64-69, 74-138; Doc. 8 at PAGEID 256-73; Doc. 11 at PAGEID 314-31, 338-421). Because defendants implicitly agree that these documents may ultimately be admissible at trial by citing to these documents in their motion for summary judgment (Doc. 39 at PAGEID 535-39), the

6

Court will consider these documents as evidence in making its summary judgment recommendation.

### III. Defendants' Motion for Summary Judgment on Plaintiff's First Amendment Claim Should be Granted

Plaintiff initiated this action pursuant to 42 U.S.C. § 1983, which prohibits any person "under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving a United States citizen "of any rights, privileges or immunities secured by the constitution and laws." To prevail on a § 1983 claim, a plaintiff must demonstrate "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

To establish a First Amendment retaliation claim, plaintiff must demonstrate:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). As to the first element, incarcerated people have a First Amendment right to file non-frivolous grievances and lawsuits against prison officials, but an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory." *Id.* (quoting *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002)).

Plaintiff reported to prison officials on October 27, 2021 that:

> On 10-23-21 c/o Deemer destroyed some of my personal property; toothpaste, deodorant, soap, legal work, religious material . . . He also destroyed my GTL earbuds and a GTL charger that was provided by the State . . . this took place at

> approx. 3:45 pm.  At 4:40 pm (approx.) c/o Deemer stood at my bars threatening me stating "he was going to get me for his buddies at RCI" . . .  Be advised that he threatened me again the next day 10-24-21 at approx. the same time as the day before . . . This man is showing forms of harassment.

(Doc. 11 at PAGEID 342).  On November 18, 2021, plaintiff again complained that:

> On 10-23-21 I was threaten[ed] and harassed by c/o D. Deemer . . . I had my cell searched and I had some property destroyed . . . I also was threaten[ed] the next day 10-24-21 c/o D. Deemer made comments about my race & religion [and] he also stated that he would get me for his buddies @ RCI.

(Doc. 8 at PAGEID 257).  On December 6, 2021, plaintiff complained, "I am a victim of targeting from c/o Deemer I have open grievances on this man and even informed IIS Mrs. Mahlman I fear retaliation . . . her indifference in this situation lead to me getting [maced] for no reason."  (Doc. 4 at PAGEID 131).  Finally, on December 23, 2021, plaintiff complained, "The training of SOCF is to be seriously questioned b/c the staff are deploying OC for no reason . . . well unpresidented [sic] reasons . . . and their supervisors are allowing it and covering up the abuse . . . similar to RCI."  (Doc. 4 at PAGEID 127).

    Brown has failed to satisfy the first element of his retaliation claim, i.e., that he engaged in protected conduct.  Plaintiff appears to allege that Deemer searched plaintiff's cell and destroyed his property because Deemer "was going to get [plaintiff] for his buddies at RCI." (Doc. 11 at PAGEID 342).  Plaintiff provides no context for Deemer's alleged statement and does not connect it to any constitutionally protected activity.  In the absence of any such evidence, plaintiff cannot establish his First Amendment retaliation claim.

    If the Court assumes that the alleged references to RCI refer to the lawsuit Brown filed against RCI corrections officials, the undersigned takes judicial notice that, according to the Court's electronic filing system, Brown did not initiate the lawsuit against RCI officials until October 29, 2021.  (*See Brown v. Cool*, No. 2:21-cv-5146, Doc. 1).  Thus, Deemer's October 23,

8

2021 cell search about which Brown complained to prison officials on October 27, 2021 could not have occurred in retaliation for Brown's lawsuit against RCI officials that Brown initiated on October 29, 2021. Brown identifies no other protected conduct which could have served as the basis for Deemer's allegedly retaliatory cell search.

The second element requires proof of an adverse action taken against Brown that would deter a person of ordinary firmness from continuing to engage in the protected conduct. While "some adverse actions are so *de minimis* that they do not rise to the level of a constitutionally cognizable injury," "'unless the claimed retaliatory action is truly "inconsequential," the plaintiff's claim should go to the jury.'" *Maben*, 887 F.3d at 266 (quoting *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)). Retaliatory cell searches and seizure or destruction of an inmate's legal papers or property satisfy the adverse action requirement. *Id.* at 267; *Bell*, 308 F.3d at 604.

Deemer argues that the October 2021 cell search did not deter plaintiff from engaging in First Amendment activity, including filing multiple grievances against Deemer days later, filing this action, and filing an additional lawsuit against various corrections personnel. (Doc. 39 at PAGEID 543). However, the Sixth Circuit has considered and rejected that argument. *See Bell*, 308 F.3d at 606 ("The relevant question is whether the defendants' actions are '*capable* of deterring a person of ordinary firmness;' there is no requirement that the plaintiff show actual deterrence.") (quoting *Thaddeus-X*, 175 F.3d at 398).

The third element requires plaintiff to demonstrate that the adverse action—the allegedly retaliatory cell search—was motivated at least in part by plaintiff's protected conduct. *Maben*, 887 F.3d at 264. If the alleged retaliatory action occurred in close temporal proximity to the protected conduct, the timing alone may be "significant enough to constitute indirect

9

evidence of a causal connection so as to create an inference of retaliatory motive." *Id.* at 268 (quoting *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004)). Once a plaintiff establishes that his protected conduct was a motivating factor for the adverse action, the burden of production shifts to defendant. *Id.* at 267. "If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id.* (quoting *Thaddeus-X*, 175 F.3d at 399).

Because Brown has failed to offer evidence of the conduct he claims to be protected, the Court has no way to determine whether or not the protected conduct was a motivating factor in the allegedly retaliatory cell search. Therefore, the burden of production does not shift to defendant Deemer in this case,[1] and defendant Deemer is entitled to summary judgment on plaintiff's First Amendment claim.

## IV. Defendants' Motion for Summary Judgment on Plaintiff's Eighth Amendment Claim Should be Granted

A convicted inmate's right to be free from the use of excessive force by a prison official is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The "core judicial inquiry" whenever a prison official stands accused of using excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Eighth Amendment excessive force claims include both a subjective and an objective component. *Johnson v. Sootsman*, 79 F.4th 608, 615 (6th Cir. 2023). The subjective component

---

[1] Defendant Deemer stated in his affidavit that the October 2021 cell search was a "routine shakedown" of Brown's cell "performed by the set forth policy and procedures by ODRC and SOCF." (Doc. 39-1 at PAGEID 554). Deemer further swore under oath that the policies require "searching every possible hidden cavity whether it be inside a deodorant container, toothpaste tube, envelopes, etc." in an attempt to locate "any possible contraband." (*Id.*).

focuses on the prison official's state of mind, while the objective component analyzes whether the pain inflicted on the prisoner was "sufficiently serious." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). In the "use-of-force context, the Supreme Court has applied a more demanding subjective test but a more relaxed objective test." *Sootsman*, 79 F.4th at 615-16.

The subjective intent necessary to sustain an excessive force claim goes beyond "deliberate indifference," which can suffice for inadequate medical care or conditions of confinement claims. *Id.* at 616. Instead, force must have been exerted "maliciously and sadistically to inflict pain" to be actionable under the Eighth Amendment. *Id.* (citing *Hudson*, 503 U.S. at 5-7). Force believed necessary, even if that belief is unreasonable, will not violate the Eighth Amendment. *Id.* (citing *Whitley*, 475 U.S. at 324).

To determine intent, courts are to consider: "What was the extent of the prisoner's injury? What was the nature of the threat that justified the use of force? Was the amount of force proportional to the threat? And did the officer take any actions designed to reduce the required amount of force?" *Id.* at 618 (citing *Hudson*, 503 U.S. at 7, and *Whitley*, 475 U.S. at 321). These questions underscore that force used "in a good-faith effort to maintain or restore discipline" does not violate a prisoner's Eighth Amendment rights. *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (defendant corrections officers applied force—spraying the prisoner with pepper spray—in a "good-faith effort to maintain or restore discipline, not to maliciously cause pain[,]" where the prisoner repeatedly disobeyed the officers' direct orders to "sit cross-legged on his bunk and face the wall")).

In cases concerning medical care or conditions of confinement, benchmarks for the objective inquiry include "serious" medical needs and "extreme" deprivations. *Sootsman*, 79

11

F.4th at 616. In excessive force cases, by contrast, "contemporary standards of decency" determine "whether specific conduct qualifies as cruel and unusual." *Id.* (quoting *Hudson*, 503 U.S. at 8). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Cordell*, 759 F.3d at 580-81 (citing *Wilkins*, 559 U.S. at 37). "When prison officials maliciously and sadistically use force to cause harm . . . , contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 9). The absence of a serious injury is nonetheless relevant as a factor that suggests whether the use of force may "plausibly have been thought necessary" in a given situation. *Id.* (quoting *Hudson*, 503 U.S. at 7). "Although the Eighth Amendment can reach minor injuries caused by significant force," it "does not apply to '*de minimis* uses of physical force' so long as this force does not repulse 'the conscience of mankind.'" *Sootsman*, 79 F.4th at 616 (quoting *Hudson*, 503 U.S. at 9-10).

In this case, plaintiff named as a defendant "the c/o who had my left thumb – 1-26-22 = Im being refused his name." (Doc. 1-1 at PAGEID 14). In an unsworn letter to the Chief District Judge that has been construed as an objection to an earlier Report and Recommendation, Brown alleged:

> Lastly the John Doe officer I have room to believe his name is c/o Jewell and he cause my thumb injury by 'bending it' as a restraining method yet I wasn't resisting these c/o's (Murray & Willow) were rough housing me in shackles and cuffs and causing me to trip and fall so they called a signal (I suppose) c/o Jewell bent my thumb so far I felt a pop and it made me kinda leap in the air.

(Doc. 12 at PAGEID 423). These allegations were deemed sufficient to state an excessive force claim against Jewell. (Doc. 22 at PAGEID 458).

12

In moving for summary judgment, Jewell filed an affidavit swearing that he was not involved in any use of force with plaintiff on January 26, 2022. (Doc. 41). Indeed, Jewell swears that he "was working [his] bid post (PM Recreation) on L-side in the M2 Gym at the time of the incident on K-side; that he does not remember having any incident with plaintiff on that date; that he reviewed his past incident reports and use of force reports to ensure that he was not involved in the incident at issue; that he reviewed the Conduct Report for the January 26, 2022 incident which does not include his name in the list of staff members involved; and that he watched the DVR footage of the incident in its entirety, and he does not appear in the recording. (Doc. 41 at PAGEID 563). In response, plaintiff offers no evidence to dispute Jewell's affidavit. Even after the Court ordered that plaintiff be shown the DVR footage of the incident and allowed him additional time to supplement his response (Doc. 58),[2] plaintiff offered no evidence disputing Jewell's affidavit. Because there is no evidence in the record tying Jewell to the January 26, 2022 use of force, Jewell is entitled to summary judgment on plaintiff's Eighth Amendment excessive force claim.

In addition, the Court has viewed the video recording of the January 26, 2022 incident in question. (Doc. 55). It depicts an inmate (presumably plaintiff) being escorted by two corrections officers (presumably Murray and Willow). One of the officers is holding the inmate's t-shirt after they all exit a door marked "K3N." At approximately, 5:54:33 on the recording, the officer places the inmate face first against the hallway wall. As these surveillance videos lack audio, there is no way to know what words the two men appear to exchange. The second officer then rejoins the first as the inmate steps away from the wall and immediately falls to the ground on his stomach at 5:54:58. The officers appear to try to lift the inmate up to

---

[2] Plaintiff acknowledged that he was shown the video recording on November 27, 2023. (Doc. 59).

resume walking, but he again falls on his stomach at 5:55:09. A third corrections officer then runs onto the scene. The three officers appear to try to lift the inmate onto his feet and against the hallway wall outside a door marked "K2N" when three additional officers run into view at 5:55:33. Four of the officers then attempt to escort the inmate down the corridor when he again falls to the ground at 5:55:43. Two more officers run onto the scene from the opposite direction. At 5:56:02, the officers appear to try to lift the inmate back up and two of them place the inmate against the wall. Only two officers appear to be touching the inmate (who remains handcuffed behind his back and shackled), but the view of his thumbs is obstructed at this time. One of the officers who is not touching the inmate, points at the inmate's face and speaks to him, but there is no way to know what is said. The escort then resumes without further incident while two officers walk nearby pushing an empty wheelchair until the inmate is inside the door marked "J2S." Plaintiff identifies the first two primary corrections officers as "Murray" and "Willow." (Doc. 12 at PAGEID 423). Without evidence from plaintiff, the Court has only Jewell's sworn statement that he is not among the responding officers. While there is a period of time when the inmate's thumbs are obstructed from view, the video recording does not depict any activity that appears "malicious" or "sadistic."

Because plaintiff has failed to offer evidence sufficient to create a genuine issue of material fact that c/o Jewell used excessive force against him, defendant Jewell is entitled to summary judgment on plaintiff's Eighth Amendment claim.

V.      **Qualified Immunity**

Deemer and Jewell contend that they are entitled to sovereign immunity as to the official capacity claims and qualified immunity as to the individual capacity claims. (Doc. 39 at PAGEID 549-50). "The Eleventh Amendment protects a state official from suit for monetary

14

damages in his or her official capacity because 'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.'" *Zakora v. Chrisman*, 44 F.4th 452, 474 (6th Cir. 2022) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Therefore, state defendants are immune from suit for monetary damages in their official capacities. *Id.* at 475. Accordingly, Deemer and Jewell, as state corrections officers, are immune from suit for monetary damages in their official capacities.

As to individual capacity claims, "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Murray v. Dep't of Corrections*, 29 F.4th 779, 786 (6th Cir. 2022) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1986)). To avoid a finding of qualified immunity at the summary judgment stage, a plaintiff must demonstrate: "(1) 'that government officials violated a constitutional right,' and (2) 'that the unconstitutionality of their conduct was clearly established when they acted.'" *Id.* (quoting *Beck v. Hamblen Cty.*, 969 F.3d 592, 598 (6th Cir. 2020)). As explained above, Brown has failed to offer evidence sufficient to create a genuine issue of fact that Deemer or Jewell violated a constitutional right. Accordingly, Deemer and Jewell are entitled to qualified immunity on plaintiff's claims.

**IT IS THEREFORE RECOMMENDED THAT:**

Defendants' motion for summary judgment (Doc. 39) be **GRANTED**.

Date: 1/22/2024

Karen L. Litkovitz
United States Magistrate Judge

15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL DEANDRE BROWN,
    Plaintiff,

vs.

LINNEA MAHLMAN, *et al.*,
    Defendants.

Case No. 1:22-cv-239

Marbley, C.J.
Litkovitz, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

16